Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:    (801) 201-1642
Facsimile:    (801) 666-7749
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., dba LDS HOSPITAL, | **COMPLAINT** |
| Plaintiff, | |
| vs. | Case No. 2:18-cv-00002-EJF |
| DANVILLE SERVICES CORPORATION, and REGENCE BLUECROSS BLUESHIELD OF UTAH, | Magistrate Judge Evelyn J. Furse |
| Defendants. | |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including LDS HOSPITAL ("LDSH" or "Hospital" herein) in Salt Lake City, Utah.

2. IHC and the Hospital may be referred to collectively herein as "Plaintiff."

3. DANVILLE SERVICES CORPORATION ("DSC") is a Utah corporation.

4. DSC provided an employee benefit plan (the "Plan") for its employees and their beneficiaries.

5. REGENCE BLUECROSS BLUESHIELD OF UTAH ("BXBS") is a Utah corporation.

6. DSC and BXBS shall be jointly referred to herein as the "Defendants."

7. DSC contracted with BXBS to insure the Plan.

8. BXBS was, at all relevant times herein, an agent of DSC.

9. BXBS was, at all relevant times herein, the health insurer for M.P.

10. DSC was, at all times relevant herein, the Plan Administrator of the Plan, as that term is defined by The Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").

11. M.P. was a beneficiary of the Plan.

12. M.P. signed a written assignment of benefits in favor of Plaintiff for all relevant claims herein.

13. Plaintiff provided medical services to M.P. on December 08, 2014 through December 31, 2014 ("Dates of Service" herein).

14. This is an action brought by the Plaintiff to collect amounts owed for unpaid medical bills resulting from health care services provided to the Patient for which the Defendants agreed to pay but refused to pay once claims were submitted.

15. This is an action brought under ERISA. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1). Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C.

§1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. §1391, jurisdiction and venue are appropriate in the District of Utah.

16. The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. §1132(a)(1)(B), for interest and attorneys' fees under 29 U.S.C. §1132(g), for statutory penalties under 29 U.S.C. §1132(c)(1), and for other appropriate equitable relief under 29 U.S.C. §1132(a)(3).

## FACTUAL BACKGROUND

### A. Medical Treatment

17. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

18. The billed charges for M.P.'s claim totaled $65,856.85.

19. The Defendants have paid only $6,070.52 (approximately 9% of the billed charges) for this claim.

20. A balance of $59,786.33 is still due to the Plaintiff by the Defendants for the services Plaintiff rendered to M.P.

21. M.P. received treatment at the Hospital on January 01, 2015, and January 02, 2015, but that treatment and charges are not part of the claim here, because M.P.'s insurance coverage with BXBS terminated after December 31, 2014.

### B. Claims and Claim Processing

22. The Hospital submitted its claims in a timely manner to the Defendants and/or their agents for M.P.'s treatment.

23. The Defendants and/or their agents denied the majority of the claims by contending that the treatment was performed out of network; exceeded usual, customary, and reasonable charges; and were not medically necessary.

24. M.P.'s treatment was due to an emergent health condition that prevented him from seeking treatment at an in-network provider.

25. At the time of treatment, M.P. was a 21-year old male who was brought to the Emergency Department at Intermountain Medical Center ("ED") by his mother on the evening of December 7, 2014, for evaluation of bizarre behavior and increased violent behavior.

26. Physical examination at the Hospital revealed M.P. had clear psychomotor retardation. The attending physician diagnosed him with psychosis potentially related to a new diagnosis of schizophrenia.

27. M.P. underwent crisis evaluation where he appeared disheveled and demonstrated poor eye contact, abnormal speech, and abnormal movement. He denied delusion, but his mother verified paranoia indicating he was most likely experiencing both audible and visual disturbances. In addition, he was experiencing every negative symptom associated with psychotic disorders and dealing with extreme impairment in all aspects of life, and on the evening of presentation reacted with aggression as a response to internal stimulus. Subsequently, he presented as an imminent danger to self, others, or property with means available and intent as well as demonstrated impaired thinking or reality

testing accompanied by worsening disordered behaviors that could not be managed safely outside of an acute care facility warranting inpatient admission.

28. M.P. involuntarily transferred to the Hospital for inpatient psychiatric admission.

29. Following admission to the Hospital, Dr. Jeffrey M. Watabe performed a thorough psychiatric admission. M.P. demonstrated poor judgment and insight into his mental illness and denied need for treatment. However, Dr. Watabe encouraged medication management with initiation of Zyprexa. Dr. Watabe anticipated a 7-day length of stay, and collateral information was needed from M.P.'s family to guide ongoing treatment.

30. On December 13, 2014, social work talked with M.P.'s family and gathered additional information. His family reported M.P. had been talking to himself at home, behaving oddly, and not leaving the house for years as well as reporting people were after him.

31. M.P. continued to refuse medications resulting in filing of a civil commitment.

32. On December 19, 2014, he underwent civil commitment and an involuntary medication hearing was scheduled. Dr. Watabe documented the need for continued inpatient stay as follows: Minimal functioning, unable to care for self, mother unable to care for M.P. in his current state, episodes of aggression, and ongoing refusal of treatment.

33. On December 22, 2014, M.P. underwent an involuntary medication hearing where approval was granted for involuntary medication administration. The proposed plan included intramuscular dosing of Zyprexa; however, M.P. agreed to oral dosing and adhered to oral Zyprexa at bedtime with gradual titration from 10 mg. to 20 mg. M.P. remained withdrawn with limited interaction with others. He gave one word/phrase answers to questions, making a thorough and accurate assessment difficult resulting in

difficulty evaluating the effectiveness of his treatment. The Zyprexa increased to 20 mg. on December 27, 2014, and on December 30, 2014, he continued to demonstrate profound functional impairment with minimal interaction. Initial paperwork for Medicaid was completed in hope that M.P. might be eligible for assertive case management with an outreach team through Valley Mental Health. He appeared to be tolerating the medication without any adverse side effects but remained mostly non-verbal and difficult to assess. M.P. continued to demonstrate profound functional impairments; however, his behavior appeared stable on Zyprexa. Therefore, his family agreed to take him back home, and on January 2, 2015, M.P. discharged to home with resources for outpatient support.

34. M.P.'s inpatient admission, the subsequent cares rendered, and his entire length of stay at the Hospital were medically necessary and appropriate for his emergent presentation with long-standing psychotic symptoms, increased agitation, and aggression. He was unable to provide his own cares, and his support system was unable to provide his cares secondary to his current psychotic state. Diagnosis included schizophrenia with the plan of care including initiation of medication management and therapy. M.P. remained resistant to both until he underwent civil commitment followed by approval for involuntary medication administration. All cares provided were in accordance with current medical as well as psychiatric guidelines and provided under the direction of the treating physician as indicated by clinical findings and ongoing assessments, and tailored to M.P.'s unique health care needs.

35. The Plaintiff submitted timely appeals to the Defendants and/or their agents.

36. The Plaintiff attempted to contact the Defendants and/or their agents on many occasions to appeal the denial of this claim, but the Plaintiff's attempts were futile.

37. The Plaintiff has also attempted to communicate with the Defendants on many occasions by phone as set forth in the electronic and written records kept by the Plaintiff of the communications it has had with the Defendants and/or their agents during the claim and appeal processes.

38. A copy of the Plaintiff's communication records was sent to the Defendants prior to this litigation being filed.

39. The Plaintiff exhausted its administrative appeals.

40. The Defendants have not paid the outstanding balance due to the Plaintiff for the treatment the Hospital rendered to M.P.

41. A balance of $59,786.33, plus interest, remains due to the Plaintiff from the Defendants for the treatment the Hospital rendered to M.P.

## FIRST CAUSE OF ACTION
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

42. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

43. The Plaintiff has submitted all proof necessary to the Defendants to support its claims for payment.

44. The Defendants have failed to provide evidence to the Plaintiff to support their basis for denial.

45. The Defendants have not fully reviewed or investigated all information sent to it by the Plaintiff and/or the Hospital, or available to it, which has caused the Defendants to deny a large portion of this claim.

46. The Defendants have failed to bear their burden of proof that an exclusion or requirement in the Plan Document supports their denial of a large portion of the claim for M.P.'s treatment.

47. The Defendants failed to offer the Plaintiff a "full and fair review" as required by ERISA.

48. The Defendants failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. MetLife v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

49. The actions of the Defendants and/or their agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

50. The actions of the Defendants and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

51. The Defendants are responsible to pay the balance of the claim for M.P.'s medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

**SECOND CAUSE OF ACTION**
(Breach of Fiduciary Duties Under 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3))

52. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

53. Defendants have breached their fiduciary duties under ERISA in the following ways:

    A.    Defendants have failed to discharge their duties with respect to the Plan:

        1.    Solely in the interest of the participants and beneficiaries of the Plan and

        2.    For the exclusive purpose of:

            a.    Providing benefits to participants and their beneficiaries; and

            b.    Defraying reasonable expenses of administering the Plan.

        3.    With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

        4.    By failing to fully investigate the Plaintiff's claims.

        5.    By failing to fully respond to the Plaintiff's appeals and requests for information in a timely manner.

        6.    And in other ways to be determined as additional facts are discovered.

54. The actions of the Defendants in breaching its fiduciary duties under ERISA have caused damage to the Plaintiff in the form of denied medical benefits.

55. In addition, as a consequence of the breach of fiduciary duties of the Defendants, the Plaintiff has been required to obtain legal counsel and file this action.

56. Pursuant to ERISA and to the U.S. Supreme Court's ruling in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866, 179 L.Ed. 2d 843 (2011), the Plaintiff's "make-whole relief" constitutes "appropriate equitable relief" under Section 1132(a)(3).

57. Therefore, the Plaintiff is entitled to payment of the medical expenses it incurred in treating M.P., as well as an award of interest, attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

### THIRD CAUSE OF ACTION

(Failure to Produce Plan Documents Upon Written Request -
29 U.S.C. §§1024(b)(4) and 1132(c)(1))

58. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

59. The Plaintiff requested a copy of the SPD and Plan Document from the Defendants, or their agents, on the following dates:

    A.   September 25, 2015;

    B.   December 12, 2015; and

    C.   December 08, 2017.

60. To date, the Defendants have not provided the requested SPD and/or Plan Document to the Plaintiff.

61. The actions of the Defendants in failing to provide, within thirty (30) days after a written request was made, a copy of relevant Plan documents, as requested on several occasions by the Plaintiff, is a violation of the provisions of 29 U.S.C. §1024(b)(4).

62. The violations of 29 U.S.C. §1024(b)(4) have damaged the Plaintiff by impeding its ability to determine the extent and scope of coverage under the Plan, hindering verification of the degree to which exclusions or limitations on coverage exist, impairing the Plaintiff's ability

to pursue administrative appeal of the Plan's denial of payment, and hindering the Plaintiff's ability to determine whether the Defendants' denial was meritorious.

63. In addition, as a consequence of the failure of the Defendants to provide the requested information in a timely manner, the Plaintiff has been required to obtain legal counsel and file this action.

64. Pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-3, the Plaintiff is entitled to payment of statutory damages of a maximum of $110.00 per day from thirty days after the date the information was requested to the date of the production of the requested documents, as well as an award of attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

65. The maximum statutory damages which have accrued for the requests which Plaintiff has made for the Summary Plan Description (SPD) and Plan Document (PD), which went unanswered, is at least $166,100.00.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount of $59,786.33, for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

2. For judgment on Plaintiff's Second Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3)), for breach of fiduciary duty and equitable damages in the form of unpaid medical benefits in

the amount of $59,786.33, for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

3. For judgment on Plaintiff's Third Cause of Action, in the amount of $110.00 per day from 30 days following the date of each request, to the date of production of the requested documents against DSC, attorney's fees and costs incurred pursuant to 29 U.S.C. §1132(g), and post-judgment interest incurred to date of payment of the judgment.

For such other equitable relief under 29 U.S.C. §1132(a)(3) as the Court deems appropriate.

DATED this 29th day of December, 2017.

          MARCIE E. SCHAAP, ATTORNEY AT LAW

          By: /s/ Marcie E. Schaap
                Attorney for Plaintiff